Mark M. Bettilyon (4798)
S. Brandon Owen (9971)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P. O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
mbettilyon@rqn.com
bowen@rqn.com

*Attorneys for Plaintiff Parlant Technology, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PARLANT TECHNOLOGY, INC., a Utah corporation,<br><br>     Plaintiff,<br><br>v.<br><br>THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, a New York corporation,<br><br>     Defendant. | **COMBINED MEMORANDUM (A) IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, TRANSFER PROCEEDINGS; AND (B) IN SUPPORT OF PARLANT'S ALTERNATIVE MOTION TO COMPEL LIMITED DISCOVERY**<br><br>Case No. 2:12-cv-00417-BCW<br><br>Magistrate Judge Brooke C. Wells |

Plaintiff Parlant Technology, Inc. ("Parlant"), by and through counsel, respectfully submits this memorandum in opposition to The Board of Education of the City School District of The City of New York's ("NYCDOE's" or "Defendant's") Motion to Dismiss For Lack of Personal Jurisdiction and Improper Venue or, in the Alternative, Transfer Proceedings.

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... i

STATEMENT OF FACTS ................................................................................................ ii

      **A.**    Parlant and its Parent Link Mark ................................................ ii

      **B.**    Parlant First Contacts NYCDOE in 2006 ................................. iii

      **C.**    NYCDOE Schedules a Telephone Meeting with Parlant .......... v

      **D.**    NYCDOE Requests an In-Person Meeting and Requests a Pilot Program ..................................................................................... v

      **E.**    Parlant Is Registered as an NYCDOE Vendor ......................... vi

      **F.**    Parlant Again Visits the NYCDOE .......................................... vii

      **G.**    Parlant and NYCDOE Continue to Communicate ................... viii

      **H.**    NYCDOE Terminates Its Relationship with Parlant and Misappropriates the ParentLink Mark ...................................... ix

ARGUMENT ...................................................................................................................... 1

  **I.**    THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER NYCDOE ............................................................................................... 1

      **A.**    NYCDOE Has Sufficient Contacts with the State of Utah ....... 2

            **1.**    The NYCDOE Has Had Extensive Contacts and Communications with the State of Utah ......................... 2

            **2.**    NYCDOE'S Willful Trademark Infringement Subjects the NYCDOE to Personal Jurisdiction ................................. 4

            **3.**    The NYCDOE's Extensive Discussions with Parlant About ParentLink Equates to "Something More" ................... 5

            **4.**    Initial Interest Confusion Further Supports a Finding of Personal Jurisdiction ...................................................... 6

            **5.**    The Interactive Nature of ARIS Parent Link Supports Jurisdiction ...................................................................... 8

      **B.**    Fairness Supports a Finding That Personal Jurisdiction Exists ............... 11

**II.** TO THE EXTENT THIS COURT IS INCLINED TO GRANT NYCDOE'S MOTION TO DISMISS, PARLANT SHOULD BE GRANTED LEAVE TO CONDUCT DISCOVERY CONCERNING JURISDICTION BEFORE DISMISSAL ............................................................. 12

**III.** VENUE IS PROPER IN THIS JUDICIAL DISTRICT ....................................... 13

CONCLUSION ............................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Australian Gold, Inc. v. Hatfield*, 436 F. 3d 1228 (10th Cir. 2006)..................................6

*Bond Leather Co. v. Q.T. Shoe Mfg. Co.*, 764 F.2d 928 (1st Cir. Mass. 1985) .............................3

*Brookfield Communications v. West Coast Entertainment,* 174 F. 3d 1036
    (9th Cir. Cal. 1999) ..........................................................................................................7

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)..........................................................3

*Chipping v. Fleming Law Firm, PLC*, 2012 U.S. Dist. LEXIS 49917
    (D. Utah Apr. 9, 2012)......................................................................................................3

*Ealing Corp. v. Harrods, Ltd.*, 790 F.2d 978 (1st Cir. Mass. 1986)..............................................3

*Icon Health & Fitness, Inc. v. Relax-a-cizor Products, Inc. d/b/a
    The Stick/RPI of Atlanta*, Case No. 1:12-cv-17, 2012 U.S. Dist.
    LEXIS 64583, * 11 (D. Utah May 4, 2012) ...............................................................12

*Infant Swimming Research, Inc. v. Faegre & Benson, LLP*, Case No. 07-1510,
    08-1235 & 08-1484, 2009 U.S. App. LEXIS 12414, * 14,
    335 Fed. Appx. 707, 713 (10th Cir. June 8, 2009) .................................................12

*Marine Life Scis., Inc. v. Unique Sea Farms, Ltd.*, 2010 U.S. Dist.
    LEXIS 26325 (D. Utah Mar. 19, 2010) .........................................................................1

*Neways, Inc. v. McCausland*, 950 P.2d 420, 422 (Utah 1997) ......................................................1

*Park Inns Int'l v. Pac. Plaza Hotels, Inc.*, 5 F. Supp. 2d 762 (D. Ariz. 1998) ...........................10

*Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270 (10th Cir. 2005) .................................3

*Pure Energy Club, LLC v. Williams*, 2011 U.S. Dist. LEXIS 70370
    (D. Utah June 28, 2011)....................................................................................................3

*Rainy Day Books v. Rainy Day Books & Café, LLC*, 186 F. Supp. 2d 1158
    (D. Kan. 2002) ................................................................................................................10

*Rambo v. American Southern Ins. Co.*, 839 F.2d 1415 (10th Cir. 1988)) ...................................3

*System Designs, Inc. v. New Customware Co., Inc.*, 248 F. Supp. 2d 1093
    (D. Utah 2003) ................................................................................... 1, 2, 4, 5, 6, 10

**Statutes**

28 U.S.C. § 1391(b) ................................................................................................ 12

28 U.S.C. § 1391(c) ................................................................................................ 12

# INTRODUCTION

Before the NYCDOE launched ARIS Parent Link in 2009, it engaged in lengthy discussions with Parlant regarding Parlant's ParentLink service and system. These discussions commenced in 2006 and continued until 2009. They involved in-person meetings, telephone calls, letters, emails, and even direct communications introducing the ParentLink service to the Chancellor of the NYCDOE, Joel Klein. NYCDOE subsequently agreed to do a pilot project of the ParentLink service and entered Parlant as a vendor into its vendor database. Ultimately, the NYCDOE decided not to move forward with any formal relationship with Parlant and instead developed a very similar service and system and adopted Parlant's federally registered trademark as the name of its nearly identical service.

Following an unfruitful exchange of letters where the NYCDOE refused to stop its infringing use of Parlant's ParentLink mark, Parlant filed suit in this Court alleging claims of trademark infringement and unfair competition. Despite the fact that Parlant employees and agents have communicated with at least a dozen NYCDOE employees over a nearly three-year time span, NYCDOE moved this Court to dismiss this action for lack of personal jurisdiction, by claiming, under oath, that it had "no contacts with the State of Utah." The NYCDOE's claim is clearly either willfully false or reflects the NYCDOE's inadequate factual investigation. In either event, NYCDOE has had substantial contact with the State of Utah and with Parlant. Indeed the facts make clear that NYCDOE learned about the Parent Link mark from Parlant, and adopted this mark even though it knew the mark belonged to Parlant. Parlant, therefore, respectfully requests that this Court deny the NYCDOE's motion.

## STATEMENT OF FACTS

**A.**       **Parlant and its Parent Link Mark**

For over 20 years, Parlant has been using the trademark ParentLink in connection with providing goods and services to schools and school districts in the Kindergarten through 12th grade market. (Declaration of Dan Nelson ¶ 5.) Parlant's primary products provide parent notification and school-to-home communications services, including communications between schools and parents regarding grades, attendance, registrations, and other student data. (*Id.*) Parlant is one of the industry leaders in this area and has a nationwide business and market. (*Id.*)

Parlant has invested substantial sums of money in the promotion of its ParentLink mark and has, through this effort, developed extensive goodwill and federal and common law rights associated with its long-standing use in interstate commerce of the ParentLink mark. (*Id.* at ¶ 6.) For example, Parlant has acquired trademark rights in the trademark ParentLink including United States Trademark Registration No. 2,622,661 that was registered as a trademark on September 24, 2002. (*Id.* at ¶ 7; Ex. A.) This registration is valid, unrevoked, subsisting, and incontestable, and constitutes prima facie evidence of Parlant's exclusive ownership of the trademark ParentLink. (*Id.*) In addition, the United States Patent and Trademark Office recently issued United States Trademark Registration No. 4,128,567. (Ex. B.) By virtue of Parlant's promotional activities and substantial investment of time and effort, the ParentLink mark is widely recognized in the marketplace by numerous consumers and customers throughout the United States. (Dan Nelson Decl. at ¶ 8.) The ParentLink service has helped and helps school districts achieve measurable improvements in parental involvement, parent satisfaction and student achievement. (*Id.* at ¶ 9.)

**B.      Parlant First Contacts NYCDOE in 2006**

Parlant sells its ParentLink service to third parties.  (*Id.* at ¶ 10.)  In 2006, Parlant

contacted the NYCDOE about Parlant's ParentLink services.  (*Id.* at ¶ 11.)  The NYCDOE is the

largest system of public schools in the United States, serving approximately 1.1 million students

in over 1,700 schools.  (*Id.* at ¶ 13; Ex. C.)  In fact, Parlant's business records indicate that

between 2006 and 2009, employees and an agent of Parlant had numerous discussions with

multiple employees of the NYCDOE including but not limited to the following individuals:

Leanne Schimabukuro, Joel Klein (Chancellor), Lilian Garelick (Director of Mandated

Responsibilities), Troy Fischer, Michelle Blackwell, Migna Taveras, Mark Spencer, Bruce Lai

(Chief of Staff for Ted Brodheim), Ted Brodheim (Chief Information Officer for NYC Public

Schools), Kim Suttell, and Linda Bailey. (*Id.* at ¶ 12.; Ex. D.)

A number of Parlant employees and an authorized agent of Parlant had contact with the

NYCDOE, including Parlant's Executive Vice-President, Business Development, Dan Nelson;

Mr. Nelson's assistant, Landra Adams; John Dougherty, an independent contractor and agent of

Parlant; Ron Saffell (Strategic Accounts Manager); and Chris Barkdull, a Parlant employee

(Executive Account Manager).   (*Id.* at ¶ 14.)  All of these individuals are based in Utah except

John Dougherty.  (*Id.*)

As early as February of 2006, Parlant had phone conversations, letter correspondence,

email communications and in-person meetings with NYCDOE employees, introducing the

NYCDOE to Parlant's ParentLink services and exploring how Parlant could be of assistance to

the NYCDOE.  (*Id.* at ¶ 15.)  Parlant further explained to the NYCDOE that Parlant's ParentLink

service was the first notification service to provide a true district-wide solution for large school

districts.  (*Id.* at ¶ 16; *see* Ex. H for a copy of of Parlant's phone logs which show the date, time, and length of any phone conversation which Parlant made to the NYCDOE from Parlant phone systems.)

Thus, as noted in greater detail below, commencing in 2006 Parlant employees and agents headquartered in Utah have had numerous conversations and exchanged numerous emails with employees and agents of the NYCDOE.  (*Id.* at ¶ 17.)  All of these contacts and communications are thus relevant to whether this Court has jurisdiction over the NYCDOE.  (*Id.* at ¶ 18.)

Many of the communications mentioned below are documented in Parlant's Parentlink database, which Parlant has maintained over the years and which Parlant uses to track selling efforts with various customers and potential customers, such as the NYCDOE.  (*Id.* at ¶ 19; Ex. D.)  According to the Parentlink database, as early as February 21, 2006, Mr. Nelson had a conversation with Leanne Shimabukuro, who Parlant understands was an employee of NYCDOE.  (*Id.* at ¶ 20; Ex. D.)  This conversation was documented in the ParentLink database. (*Id.*)

On March 6, 2006, Mr. Nelson had a telephone conversation with Mr. Joel Klein, the Chancellor of the NYCDOE following which on March 7, 2006, Mr. Nelson sent him a letter. (*Id.* at ¶ 21; Ex. E.)  In this letter, which Mr. Nelson mailed on Parlant's behalf to New York from Utah, Mr. Nelson informed Chancellor Klein that he worked for a company called "Parentlink."  (*Id.*)  Mr. Nelson further informed him that Mr. Nelson's company "works with schools districts to help them improve their communications."  (*Id.*)  Mr. Nelson further

informed Chancellor Klein that Parlant's services had been documented to increase parent and teacher satisfaction and reduce the disparity between minority and non-minority test scores. (*Id.*)

Mr. Nelson also provided Chancellor Klein with a brochure which notes "PARENTLINK" on the cover of the brochure. (*Id.* at ¶ 22; Ex. F.) This brochure further notes that "Parlant Technology Inc. is a privately held company headquartered in Provo, Utah." (*Id.*) The brochure further described the services available from Parlant. (*Id.* at ¶ 22; Ex. F.)

### C.    NYCDOE Schedules a Telephone Meeting with Parlant

The Parentlink database next notes that on October 10, 2006, Landra Adams sent an email to Lilian Garelick at the NYCDOE, following up on prior communications regarding Parlant's services. (*Id.* at ¶ 24; Ex. D at 6.) Parlant understands that Lilian Garelick was the NYCDOE's Director of Mandated Responsibilities and thus responsible for attendance in the New York City School District. (*Id.* at ¶ 36; Ex. D.)

Thereafter, on October 25, 2006, Adams and Garelick spoke again and the Parlant database indicates that Garelick "was interested in what I had to say." (*Id.* at ¶ 25; Ex. D at 5.) The Parlant database further notes that Garelick, on behalf of the NYCDOE, agreed to schedule a telephone appointment on November 3, 2006. (*Id.*) Parlant's database then notes, in an entry dated November 3, 2006, that the "phone appointment with Lilian Garelick [went] VERY WELL!" (*Id.*) The entry further notes "she [Lilian Garelick] is interested in a pilot project and requested prices – Dan said $2.60 per student. We are calling to set up a site visit ASAP." (*Id.*)

### D.    NYCDOE Requests an In-Person Meeting and Requests a Pilot Program

The ParentLink database shows that on November 6, 2006, Landra Adams again called Lilian Garelick and set up a site visit for Mr. Nelson. (*Id.*) On or around December 1, 2006, Mr.

Nelson flew to New York from Salt Lake City. (*Id.* at ¶ 29; Ex. D.) While in New York, Mr.

Nelson met with at least 3 NYCDOE employees in a NYCDOE building located in New York.

(*Id.*) He made a presentation about the ParentLink system, shared the vision of what ParentLink

does, told them the name of the company is ParentLink, and provided them with literature. (*Id.*)

During this meeting NYCDOE also expressed interest in wanting to set up a pilot program

utilizing Parlant's services. (*Id.* at ¶ 30; Ex. D.) Mr. Nelson was informed that the pilot program

would cover 20 schools in the district and approximately 60,000 students. (Ex. G)

The ParentLink database reflects these activities as it shows that on December 1, 2006,

Landra Adams recorded a note regarding Mr. Nelson's on-site visit noting "Ms. Garelick wants

to do a pilot project for 20 schools – TRIPLE YEAH!!!!" (*Id.* at ¶ 31; Ex. D.)

**E.      Parlant Is Registered as an NYCDOE Vendor**

The same entry noted above also indicates that Landra Adams "got us registered on the

purchasing webport and gave Dan the forms to register our company." (*Id.* at ¶ 32; Ex. D.) It is

Mr. Nelson's understanding that at that point in time Parlant, with the consent of the NYCDOE

became registered as a vendor for the NYCDOE, so that it could appropriately bill the NYCDOE

for the then-contemplated pilot project. (*Id.*)

In this same time frame, NYCDOE requested a second meeting which was scheduled for

December 7, 2006 in New York City. (*Id.* at ¶ 33; Ex. D.) These events are also recorded in the

Parentlink database which notes that Landra Adams spoke with Lilian Garelick: "I spoke with

Lilian and confirmed the meeting for 12/7/06 at 9 A.M." (*Id.* at ¶ 34; Ex. D.) The ParentLink

database shows that on December 4, 2006, Landra Adams mailed a W-9 form to NYCDOE

employee Lilian Garelick. (*Id.* at ¶ 35; Ex. D.)

**F.      Parlant Again Visits the NYCDOE**

On December 7, 2006, John Dougherty of Parlant met with 10 individuals who, collectively, represented all 5 boroughs of the NYCDOE and who were responsible for attendance and attendance improvement in New York City schools at all levels of the NYC's K-12 system.  (*Id.* at ¶ 37; Ex. D at 6.)  The meeting lasted almost one and a half hours.  (*Id.*)  Lilian Garelick, who had arranged for the meeting between Parlant and NYCDOE, reaffirmed that she wanted to move forward with a pilot study of the ParentLink system in the five boroughs.  (*Id.*)  The parties also agreed to set up a demonstration of the ParentLink system using actual NYC school data.  (*Id.*)  Thereafter, on December 7, 2006, Mr. Nelson sent an additional letter to Lilian Garelick.  (*Id.* at ¶ 38; Ex. G.).  In this letter, Mr. Nelson notes:

> Thank you for your interest in Parentlink as a solution to help you with your goal to improve attendance.  As per our meeting on December 1, 2006, we discussed performing a pilot that will include approximately 20 schools/60,000 students.

(*Id.*)  In addition, the letter provided other information Ms. Garelick had requested, including Parlant's vendor number and budget information for the pilot program, which was contained in a brochure attached to Mr. Nelson's letter.  (*Id.* at ¶ 39; Ex. G.)  The letter also clearly denoted that Parlant has a "copyright" on the term "Parentlink."  (*Id.* at ¶ 40; Ex. G.)

The ParentLink database also shows that on or around December 15, 2006, Mr. Nelson left a message with NYCDOE employee Lilian Garelick to follow up on the meetings and to give an update on the information that she had requested.  (*Id.* at ¶ 41; Ex. D at 5.) The ParentLink database also indicates that thereafter Parlant sent additional information to the NYCDOE.  (*Id.* at ¶ 42; Ex. D at 5.)  Specifically, on January 3, 2007, Landra Adams noted that she communicated with Lilian Garelick, who confirmed receipt of Mr. Nelson's December 7

proposal but had not seen additional information since then.  (*Id.*)  The ParentLink database then notes that Landra Adams "got transferred to Reynoldo who said he had not seen anything come from ParentLink in the last week."  (*Id.* at ¶ 43; Ex. D at 5.)  Two days later Landra Adams noted in the ParentLink database that "Reynoldo hasn't seen our package yet so I gave him the UPS tracking and delivery information and he is following up."  (*Id.*)  Thereafter, on January 11, 2007, the ParentLink database notes that Reynoldo called Landra Adams and "confirmed receipt of the proposal which has been given to Lilian."  (*Id.* at ¶ 43; Ex. D at 4.)

**G.       Parlant and NYCDOE Continue to Communicate**

Thereafter, the Parentlink database shows numerous other entries, during 2007 representing contacts and communications between Parlant and the NYCDOE.  (*Id.* at ¶ 44; Ex. D at 1-4.)  For example, on September 18, 2007, the Parentlink database notes that Landra Adams recorded that Robert Thomsen, of the NYCDOE, confirmed that Parlant is "in the system as a vendor."  (*Id.* at ¶ 45; Ex. D at 2.)  It further indicates that "Dan Nelson" was listed as "contact" and that the system used Parlant's "Tax ID#."  (*Id.*)  Similarly, on October 3, 2007, the ParentLink database notes that NYCDOE employee Michelle Blackwell "forwarded my email literature to Bruce Lay (*sic*)."  (*Id.* at ¶ 46; Ex. D at 2.)  It is Mr. Nelson's understanding that Bruce Lai is associated with the NYCDOE.  (*Id.*)

The ParentLink database further notes that Michelle Blackwell "expects him [Nelson] to email me later today and see about setting up a phone conference."  (*Id.*)  The ParentLink database shows that on September 18, 2007, Landra Adams sent an email to Michelle Blackwell of the NYCDOE and attached a sales slick called "ParentLink Communications Services."  (*Id.* at ¶ 46; Ex. D at 2.)

On or around March 24, 2009, Parlant's marketing department sent an "I Choose ParentLink" promotional mailer to Joel Klein and Troy Fischer at NYCDOE.  (*Id.* at ¶¶ 48-49; Ex. D at 6.)

## H.    NYCDOE Terminates Its Relationship with Parlant and Misappropriates the ParentLink Mark

On August 9, 2010, Parlant was informed that the NYCDOE had decided to create its own student notification program which Parlant understands is functionally equivalent or at least very similar to Parlant's ParentLink system.  (*Id.* at ¶ 50; Ex. D at 1.)  Parlant was further informed that the NYCDOE also decided to use Parlant's intellectual property rights as they had decided to call its system "ARIS Parent Link."  (*Id.*)

## I.    NYCDOE Has Additional Contacts with the State Utah

In addition to the lengthy discussions with Utah-based Parlant and its employees regarding its ParentLink service and system, Parlant is aware of other contacts which the NYCDOE has with the State of Utah.  As described in more detail below, the NYCDOE has hired a Utah consultant, sends text messages to Utahns relating to its ARIS Parent Link service, solicits donations from Utahns, and encourages web users from Utah to submit messages to the NYCDOE Chancellor.  For instance, a March 2011 newsletter from a NYCDOE's school states that "We will have a consultant from Cutting Edge Education in Utah come for two days to supervise lab-site lessons focused on the SIOP model."[1]  (Declaration of Jacob C. Ong ¶ 29; Ex. 18.)

---

[1] The pronoun "we" refers to the NYCDOE school, Anna Silver School.  (*Id.*)

In addition, the NYCDOE's webpage solicits donations from Utah residents who are alumnus of the NYCDOE as Utah residents can select the "Donate" button on the website to make a donation. (*Id.* at ¶ 22; Ex. 11.) Web users who subscribe to the Fund for Public Schools can select Utah as their state of residence from a drop-down menu. (*Id.* at ¶ 22; Ex. 11.)

The NYCDOE has a texting service called "877-877," and describes this texting service as a "new mobile texting program that will send school-related information, including calendar updates, reminders and tips on how to access school resources." (*Id.* at ¶ 30; Ex. 19.) On September 20, 2012, Mr. Jacob Ong, Parlant's general counsel, enrolled in the service while in Utah. (*Id.*) His Utah based iPhone® device received text messages which use Parlant's ParentLink trademark as follows: "Get help with ARIS Parent link . . . ." (*Id.*)

The NYCDOE also encourages web users to submit a message to the Chancellor, and allows Utah residents to select Utah from a drop down menu and submit a message to the Chancellor. (*Id.* at ¶ 34; Ex. 23.) By clicking on the  button (Subscribe button) of the schools.nyc.gov homepage (as shown in Exhibit 3), a user is redirected to a NYCDOE webpage that encourages users to use their email address to subscribe to email updates. (*Id.* at ¶ 20; Ex. 9.) On this webpage, a Utah resident may sign up to receive emails from the NYCDOE by designating that he or she is an "Interested non-NYC resident" or an "Other." (*Id.*)

Although the NYCDOE states in its affidavit that the NYCDOE website was designed only for administrators, parents, and students, the NYCDOE has allowed access to ARIS ParentLink by community organizations which work with teenagers. (*Id.* at ¶ 32; Ex. 21.) Sophie Lippincott, who is a former director in the NYCDOE Division of Performance and

Accountability, stated "It's obviously in our favor to have partner organizations using ARIS . . . The district has trained two organizations that are 'gung-ho . . . and ready to go.'" (*Id.* at 11.) Sophie Lippincott also said that it is difficult for non-school employees to gain access to ARIS. (*Id.*) One report said that the NYCDOE "has recently developed a temporary solution that enables schools to grant access to certain community partners." (*Id.*)

Shael Polakow-Suransky, who in October 2010 was the NYCDOE's Deputy Chancellor in the Division of Performance and Accountability said that: "In the future, New York will work to transform ARIS from a large, centrally controlled system to one that provides core data with a flexible platform that others can build on—"more like an iPhone than a single application," Polakow-Suransky says. (*Id.* at 13 (emphasis added)). In addition, the NYCDOE's former Chancellor, Mr. Klein called the NYCDOE's ARIS Parent Link "a powerful tool." (*Id.* at ¶ 33; Ex. 22.)

**ARGUMENT**

**I.     THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER NYCDOE**

The evaluation of specific jurisdiction requires a three-part inquiry:  1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; 2) a nexus must exist between the plaintiff's claims and the defendant's acts or contacts; and 3) the application of the Utah long-arm statute must satisfy the requirements of federal due process.  *System Designs, Inc. v. New Customware Co., Inc.*, 248 F. Supp. 2d 1093, 1096 (D. Utah 2003).  "The long-arm statute must be interpreted broadly" so as to assert jurisdiction over nonresident defendants to the "fullest extent permitted by the due process clause."  *Id.* at 1097.  "It is frequently helpful to undertake the due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute."  *Id.*

Importantly, at this stage Parlant need only make a prima facie showing of personal jurisdiction over the NYCDOE.  *Id.* at 1096.  In making that determination, the Court should resolve all factual disputes in Parlant's favor.  *Id.*; *Marine Life Scis., Inc. v. Unique Sea Farms, Ltd.*, 2010 U.S. Dist. LEXIS 26325 (D. Utah Mar. 19, 2010)(where conflicting declarations are submitted in asserting specific personal jurisdiction, the "Court must resolve the factual disputes in Plaintiff's favor").  "[S]o long as the cause of action arises out of the contact itself, a prima facie showing of specific personal jurisdiction under the Utah long-arm statute only requires evidence of 'minimal contacts' with the state through transaction of any business in the state . . . or causing injury within the state through tort or breach of warranty."  *Neways, Inc. v. McCausland*, 950 P.2d 420, 422 (Utah 1997).

### A.     NYCDOE Has Sufficient Contacts with the State of Utah

The due process test looks first at whether the defendant has sufficient minimum contacts with the forum state.  *Id.*  In evaluating a party's minimum contacts, a court focuses on the relationship among the defendant, the forum, and the litigation.  *System*, 248 F. Supp. 2d at 1096.  "Minimum contacts must have a basis in some act by which the defendant purposefully avails itself of the privilege of conducting activities in the forum state, thus invoking the benefits and privilege of its laws."  *Id.*  In other words, this requires the NYCDOE to have "deliberately created a relationship with Utah that would serve to make Utah's exercise of jurisdiction foreseeable."  *Id.*  The NYCDOE must "expressly aim" or "intentionally direct" its activity at Utah residents.  *Id.*  As the below analysis shows, the NYCDOE has clearly done so.

### 1.     The NYCDOE Has Had Extensive Contacts and Communications with the State of Utah

As noted in the factual section above, between 2006 and 2009, Parlant employees and representatives had communications with at least a dozen different NYCDOE employees, including its Chancellor, Joel Klein.  In this timeframe, Parlant and NYCDOE exchanged email communications, set up telephone calls, NYCDOE entered Parlant into its vendor system, discussed a pilot program, and otherwise engaged in business dealings directed at the State of Utah.

Importantly, all of these communications concerned a service called "ParentLink," a service for which Parlant owns a federally registered trademark.  Indeed, these ongoing communications lead to the inexorable conclusion that the NYCDOE decided to name its own similar product "ParentLink."

Case law concerning long-arm statute makes clear that these types of ongoing and systematic communications are more than sufficient to establish jurisdiction in this Court. *See, e.g. Pure Energy Club, LLC v. Williams*, 2011 U.S. Dist. LEXIS 70370 (D. Utah June 28, 2011) (quoting *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988))("In proper circumstances, even a single letter or telephone call to the forum state may meet due process standards."); *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1278 (10th Cir. 2005) (holding that the "'quantum of contacts' between the parties is not determinative of personal jurisdiction," rather it is the "content of these communications" that supports the exercise of personal jurisdiction.); *Chipping v. Fleming Law Firm, PLC*, 2012 U.S. Dist. LEXIS 49917 (D. Utah Apr. 9, 2012)(finding personal jurisdiction where defendant sent at least one letter, several emails and participated in phone calls with persons in Utah); *Bond Leather Co. v. Q.T. Shoe Mfg. Co.*, 764 F.2d 928 (1st Cir. Mass. 1985)( mailing four letters and making one telephone call to the forum state satisfied the "transacting any business" requirement); *Ealing Corp. v. Harrods, Ltd.*, 790 F.2d 978 (1st Cir. Mass. 1986)(found jurisdiction existed where cause of action arose from the sending of a telex to plaintiff in the forum state).

This case law is consistent with the United States Supreme Court's case law that recognizes that the "inescapable fact of modern commercial life [is] that a substantial amount of business is transacted solely by mail and wire communications across state lines," and that "[s]o long as a commercial actor's efforts are 'purposefully directed' towards residents of another State, we have consistently rejected the notion that absence of physical contacts can defeat personal jurisdiction there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (citations omitted). Clearly, the NYCDOE purposefully directed activities toward Parlant and

the State of Utah as part of discussions regarding the same trademark that is at issue in this dispute. If the NYCDOE did not want to do business with a Utah company it should have declined to engage in the significant business dealings with Parlant directed at the State of Utah.

### 2. NYCDOE'S Willful Trademark Infringement Subjects the NYCDOE to Personal Jurisdiction

Contrary to the NYCDOE's contentions, Parlant's allegation that the "brunt of the injury" occurred in Utah is also a sufficient basis on which to exercise jurisdiction according to the facts of this case. *See* Complaint at ¶ 7. This is especially true given that NYCDOE knew of Parlant's ParentLink trademark and associated service and still decided to create a highly similar service that incorporated Parlant's entire ParentLink trademark. NYCDOE has stated under oath that it has "no contacts with the State of Utah" and is "entirely restricted to managing the New York City public school system (*see* Motion to Dismiss, p. 2). At best these statements demonstrate that the NYCDOE filed the instant motion with little or no investigation in-to the facts[2].

In a tort case such as this (trademark infringement is a tort), jurisdiction may attach if the defendant's conduct is aimed at or has an effect in the forum state. *System*, 248 F. Supp. 2d at 1097. More specifically, "[p]ersonal jurisdiction can be based upon intentional actions, expressly aimed at the forum state, causing harm, the brunt of which is suffered, and which the defendant knows is likely to be suffered, in the forum state." *Id.* at 1097-98.

In trademark cases applying the "effects test," a federal trademark registration plays a significant role. "By registering a trademark with this database, an owner of a mark puts the

---

[2] If the Court concurs that the NYCDOE's factual investigation was inadequate, Parlant respectfully requests that the Court award Parlant the fees and costs it incurred for having to respond to this Motion to Dismiss. Parlant has been forced to defend a motion that is not based on an accurate record. The interests of justice are not served by parties who believe they can make untruthful statements under oath without conducting an appropriate factual investigation.

world on notice—literally—that they have the rights to that mark. Not only does this establish a constructive notice as to the right to use the mark, it also establishes a constructive notice as to where the mark is registered." *Id.* at 1098. Thus, the NYCDOE was clearly on notice of Parlant's trademark.

In *System*, this Court said that in order to avoid suit in Utah, the defendant only needed to look up the plaintiff's mark before it chose to adopt it for its company name. *Id.* at 1098-99. The Court reasoned that a search would have quickly revealed that the mark in question was a registered Utah trademark, thereby warning it that it might be subject to suit in Utah if it chose to use that mark. *Id.* at 1099. As in *System*, the allegedly infringing trademark in this case incorporated the entire asserted mark (i.e. ParentLink v. ARIS Parent Link and New Customware v. New Customware). *Id.* Parlant's United States Trademark Registration No. 2,622,661 was registered as a trademark on September 24, 2002 – well before the time the NYCDOE launched its ARIS ParentLink in May of 2009 – so a quick search of the federal trademark records would have found Parlant's registration. (Dan Nelson Decl. at ¶7, Ex. A.); (Declaration of Veronica Conforme, ¶ 11, attached as Exhibit A to the NYCDOE's Motion to Dismiss.) In *System*, this Court said that "a strong argument can be made here for finding that [the defendant] is subject to personal jurisdiction in Utah based on the alleged infringement alone." *System*, 248 F. Supp. 2d at 1098. An even stronger argument can be made in the present case.

### 3. The NYCDOE's Extensive Discussions with Parlant About ParentLink Equates to "Something More"

The factual similarities to the *System* case continue. As in *System*, the facts in this case present "something more" to establish jurisdiction. As explained in detail in the fact section above, before the NYCDOE launched ARIS Parent Link in 2009, it engaged in serious

discussions with Parlant regarding its ParentLink service and system in 2006. These discussions involved in-person meetings, telephone calls, letters and emails and even direct communications introducing the ParentLink service with the Chancellor of the NYCDOE, Joel Klein. NYCDOE subsequently agreed to do a pilot program of the ParentLink service, entered Parlant as a vendor into its vendor database, decided not to move forward with any formal relationship with Parlant and then developed a very similar service and system that incorporated Parlant's entire ParentLink mark. As the Court said in *System*, given these facts, it would hardly be surprising for the defendant to find itself subject to a lawsuit in Utah. *Id.* at 1099.

Furthermore, as in *System*, the nature of the NYCDOE website demonstrates that the NYCDOE intended to reach users in Utah, not just New York. For example, the NYCDOE website solicits comments from Utahns, solicits emails from alumni of the NYCDOE in Utah, allows remote access from Utah, allows non-residents (including those from Utah) to register for text messages and calls and has a "visitors" tab. In addition, the NYCDOE hired a Utah consultant. Clearly, these facts show that the NYCDOE expressly aimed its actions at the Utah market. Consequently, Parlant respectfully submits that this Court should conclude that jurisdiction for the alleged trademark infringement is proper in Utah under the "effects" test alone.

### 4. Initial Interest Confusion Further Supports a Finding of Personal Jurisdiction

The initial interest confusion doctrine provides another reason personal jurisdiction exists. "Interest confusion results when a consumer seeks a particular trademark holder's product and instead is lured to the product of a competitor by the competitor's use of the same or a similar mark." *Australian Gold, Inc. v. Hatfield*, 436 F. 3d 1228, 1238 (10th Cir. 2006).

In the landmark initial interest confusion case, *Brookfield Communications v. West Coast Entertainment,* 174 F. 3d 1036, 1064 (9th Cir. Cal. 1999) the court held that a consumer does not need to actually be confused for initial interest confusion to occur. *Brookfield Communications v. West Coast Entertainment*. *Brookfield* explained this doctrine by using the following hypothetical involving two competitors, West Coast Video and Blockbuster Video. *Id*. Blockbuster puts a billboard advertising a West Coast Video store right before an upcoming exit when in reality there is no West Coast Video at this exit. *Id*. Instead, there is a Blockbuster Video just off the exit. *Id*. The consumer exits the freeway expecting to find a West Coast Video store but seeing only the Blockbuster Video store decides to patronize it as a suitable replacement. *Id*. Even though the consumer confusion is dispelled because the consumer knows he is not at West Coast Video, under the doctrine of initial interest confusion, Blockbuster is still misappropriating the acquired goodwill of the West Coast Video's trademark. *Id*.

In this case, the NYCDOE is liable for initial interest confusion because the NYCDOE's unauthorized use of the ParentLink mark diverts internet traffic away from Parlant's website and unfairly capitalizes on the goodwill associated with Parlant's trademark. An internet user in Utah could type in the term ParentLink into an online search engine, such as google.com, and be diverted to NYCDOE's website that includes the unauthorized use of Parlant's trademark. Even though the internet user later discovers that the NYCDOE's use of the ParentLink name is distinct and comes from a different source than Parlant, it is too late, initial interest confusion has occurred. For example, a simple search on the Google® search engine for Parlant's ParentLink mark shows that Parlant's www.parentlink.net site was the fifth ranked result and that the

NYCDOE's https://arisparentlink.org/parentlink site was the ninth ranked result. (Jacob Ong Decl. at ¶ 24; Ex. 13.) Thus, initial interest confusion is likely.

Other specific instances of initial interest confusion on the internet are widespread. For example, a search on YouTube.com for ParentLink yielded multiple videos produced by Parlant and a video produced by NYCDOE that uses the ParentLink trademark was found in close proximity. (*Id.* at ¶ 25; Ex. 14.) In addition, a search on duckgo.com, a website targeted at a younger audience of the K-12 range, revealed that the 9th search result was for ARISParentLink.org and linked to an ARIS Parent Link login page for parents. (*Id.* at ¶ 26.; Ex. 15.) A search on www.backlinkwatch.com, which calculates the number of backlinks to any given website, revealed that the website parentlink.net has 235 webpages which are backlinked to it and that the website arisparentlink.org has 1,123 webpages which are backlinked to it. (*Id.* at ¶ 5.; Ex. 1.) In addition, the ARISParentlink.org website uses the "ParentLink" trademark 19 times as metatags in its homepage HTML coding. (*Id.* at ¶ 35.; Ex. 25.)

Backlinks are important because Google and other search engines calculate the number of backlinks when determining whether a particular website should be listed higher in a search result. (*Id.* at ¶ 4.) Metatags are similarly important for directing internet traffic.

Thus, the NYCDOE's unlawful use of Parlant's trademark constitutes initial interest confusion, has harmed Parlant in Utah and is another reason justifying the denial of the NYCDOE's motion.

### 5. The Interactive Nature of ARIS Parent Link Supports Jurisdiction

Contrary to the NYCDOE's contentions that ARIS Parent Link is informational only, the ARIS Parent Link website and program are interactive. *See* NYCDOE's Memorandum in

Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, In the Alternative, Transfer Proceeding ("Motion to Dismiss"), p. 2. For example, the NYCDOE's free texting service called "877-877" allows individuals to receive text messages nationwide, including in Utah, that relate to the ARIS Parent Link program. (Jacob Ong Decl. at ¶ 30.) Anyone can text their number to 877-877 and receive alerts about the school, including receiving instructions about ARIS Parent Link. (*Id.*) The NYCDOE also has a Facebook® webpage, www.facebook.com/NYCschool that reaches out to parents regarding ARIS Parent Link. (*Id.* at ¶ 15; Ex. 5.) The NYCDOE's homepage contains a link to the Vimeo® service (which is similar to the YouTube® service) where NYCDOE posted a video about ARIS Parent Link. (*Id.* at ¶ 16-17; Ex. 6.) In addition, the Google Play® service sells an ARIS Parent Link mobile app for $0.99. (*Id.* at ¶ 31; Ex. 20.) The NYCDOE website solicits donations from Utah residents who are alumnus of New York City public schools or who are not a New York City public school alumnus but are interested in supporting New York City public schools. (*Id.* at ¶ 22; Ex. 11.) The NYCDOE website also encourages web users to submit messages to the Chancellor and allows Utah residents to select Utah from a drop down menu and submit a message to the Chancellor. (*Id.*) In addition, the Chancellor hosts interactive webcasts. (*Id.* at ¶ 36; Ex. 26.) These are just a few examples of which Parlant is aware that shows the interactive nature of the ARIS Parent Link website and service.

In fact it appears that not only is the ARIS Parent Link website and program currently interactive, but the NYCDOE has more expansive plans to increase its interactive nature. For

example, the Chancellor of the NYCDOE, Mr. Joel Klein said that ARIS Parent Link is a powerful tool that allows "parents to work more closely with teachers to help their children." (*Id.* at ¶ 33; Ex. 22.)  Similarly, Shael Polakow Suransky, a NYCDOE Deputy Chancellor, described ARIS Parent Link as a flexible platform that others can build on --- "more like an iPhone than a single application."  (*Id.* at ¶ 32; Ex. 21.)   While the NYCDOE suggests that ARIS Parent Link's use is limited to students, parents and school administrators (*see* Motion to Dismiss, p. 2), the NYCDOE has allowed access to others, such as community organizers.   (*Id.*) This does not mesh with the definitive statement of the NYCDOE that the ARIS Parent Link website is "informational only."  (Motion to Dismiss, p. 2.)  In contrast, ARIS Parent Link is a powerful, interactive platform that has nationwide use and application.

From the above facts, it is clear that ARIS Parent Link allows for the exchange of information (e.g. free texting service, solicits donations and messages to the Chancellor), and has a clear nexus between its website and the forum state (e.g. engaged in extensive negotiations with Parlant regarding use of its Parent Link service).   *System*, 248 F. Supp. 2d at 1100. (interactive websites entail the exchange of information).    Under these circumstances, the NYCDOE is clearly subject to specific personal jurisdiction in this forum.  *Rainy Day Books v. Rainy Day Books & Café, LLC*, 186 F. Supp. 2d 1158, 1165 (D. Kan. 2002) (finding purposeful availment where defendant could accept book orders from forum state); *Park Inns Int'l v. Pac. Plaza Hotels, Inc.*, 5 F. Supp. 2d 762, 764-65 (D. Ariz. 1998) (finding purposeful availment

where defendant accepted hotel reservations through website from seven residents of forum state).

In sum, taken in combination with the alleged trademark infringement (as well as initial interest confusion infringement discussed below), the website and interactive nature of the ARIS Parent Link program provide an additional basis for jurisdiction.

### B.    Fairness Supports a Finding That Personal Jurisdiction Exists

"Once it has been established that a defendant's actions created sufficient minimum contacts, the court still must consider whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice." *System*, 248 F. Supp. 2d at 1104.  This inquiry requires a determination of whether the district court's exercise of jurisdiction over the defendant is reasonable in light of the circumstances surrounding the case.  *Id.*  "In determining whether the exercise of jurisdiction is reasonable the court must look at the following factors: 1) the burden on the defendant; 2) the forum state's interest in resolving the dispute; 3) the plaintiff's interest in receiving convenient and effective relief; 4) the interstate judicial systems interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental substantive social policies."  *Id.* at 1104.

It is clear that it is reasonable to exercise jurisdiction in this case over the NYCDOE.  A defendant's burden is only a factor if the "inconvenience to it is so great as to constitute a deprivation of due process."  *Id.*  As admittedly the largest system of public schools in the United States, the NYCDOE's inconvenience clearly does not approach the level of being a deprivation of due process.  Moreover, Utah is interested in protecting the intellectual property interests of its residents.  In addition, Parlant has a significant interest in receiving convenient and effective

relief in its home state. Parlant took the time, effort and paid the expense necessary to properly register its trademark in the trademark registry. It is not unreasonable to require the NYCDOE to come to Utah with its challenges to that trademark, especially given the parties' prior history and given the NYCDOE's seemingly willful disregard of Parlant's trademark rights in adopting Parlant's trademark. Jurisdiction in Utah is, therefore, clearly not constitutionally unreasonable.

## II. TO THE EXTENT THIS COURT IS INCLINED TO GRANT NYCDOE'S MOTION TO DISMISS, PARLANT SHOULD BE GRANTED LEAVE TO CONDUCT DISCOVERY CONCERNING JURISDICTION BEFORE DISMISSAL

In the event this Court is inclined to grant a dismissal of this action, Parlant moves this Court for leave to conduct limited discovery on facts related to jurisdictional questions. In particular, Parlant seeks leave to obtain discovery concerning NYCDOE's contacts with the State of Utah, including access to its website made from Utah or other states, contracts and other business relationships it has with entities and people in Utah. In addition, Parlant seeks discovery concerning those individuals with whom Parlant met in New York City, documents concerning why NYCDOE did not do business with Parlant and a 30(b)(6) deposition.

Courts have broad discretion to grant leave to conduct discovery concerning jurisdictional facts. *See Icon Health & Fitness, Inc. v. Relax-a-cizor Products, Inc. d/b/a The Stick/RPI of Atlanta*, Case No. 1:12-cv-17, 2012 U.S. Dist. LEXIS 64583, * 11 (D. Utah May 4, 2012); *see also Infant Swimming Research, Inc. v. Faegre & Benson, LLP*, Case No. 07-1510, 08-1235 & 08-1484, 2009 U.S. App. LEXIS 12414, * 14, 335 Fed. Appx. 707, 713 (10th Cir. June 8, 2009) ("If . . . the defendant files a motion to dismiss for lack of jurisdiction . . . a district court may conduct limited discovery on the jurisdiction issue and resolve the matter on motion supported by affidavit").

The NYCDOE engaged Parlant, a Utah-based company, in serious discussions relating to whether the NYCDOE would use Parlant's ParentLink services.  These discussions involved in-person meetings, telephone calls, letters and emails.   In addition, Parlant is aware of a number of additional contacts the NYCDOE has with the State of Utah, as discussed above, including the NYCDOE's interactive website that solicits comments from Utahns and solicits emails from alumni of the NYCDOE in Utah.  In so doing, NYCDOE has subjected itself to the courts of the State of Utah, including this Court.  Parlant contends that discovery will confirm that NYCDOE has sufficient minimum contacts for specific jurisdiction in Utah.  Furthermore, Parlant contends that discovery may also reveal that NYCDOE has sufficient contacts in the State of Utah to be subject to general jurisdiction.  Based on the foregoing, to the extent this Court is contemplating a grant of NYCDOE's Motion to Dismiss, Parlant request that this Court grant it leave to conduct discovery on jurisdictional questions that concern NYCDOE and this case.

## III.    VENUE IS PROPER IN THIS JUDICIAL DISTRICT

Venue is proper in this district if NYCDOE is subject to personal jurisdiction in this district.  28 U.S.C. § 1391(c).  As demonstrated above, NYCDOE is indeed subject to personal jurisdiction before this Court.  Accordingly, venue is properly laid in this district.[3]

---

[3] Venue is also proper if "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated."  28 U.S.C. § 1391(b).  As explained above in the personal jurisdiction analysis, NYCDOE has committed infringement in this judicial district.  Thus, a substantial part of the events giving rise to Parlant's claim occurred in this district.  The property at issue in this litigation, namely Parlant's ParentLink mark, is also situated in this district because it is owned by a corporation domiciled in this jurisdiction.  Each of these facts provides a further, and independent, basis for venue in this jurisdiction.

**CONCLUSION**

For the foregoing reasons, Parlant requests that the Court deny the NYCDOE's Motion to Dismiss or stay its decision on the Motion to Dismiss and grant Parlant leave to conduct limited discovery concerning jurisdictional facts.

DATED this 22nd day of October 2012.

RAY QUINNEY & NEBEKER P.C

 /s/  S. Brandon Owen
Mark M. Bettilyon
S. Brandon Owen

*Attorneys for Plaintiff Parlant Technology, Inc.*

1203356v2

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of October 2012, I electronically filed the foregoing

**COMBINED MEMORANDUM (A) IN OPPOSITION TO DEFENDANT'S MOTION TO**

**DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR,**

**IN THE ALTERNATIVE, TRANSFER PROCEEDINGS; AND (B) IN SUPPORT OF**

**PARLANT'S ALTERNATIVE MOTION TO COMPEL LIMITED DISCOVERY** with the

Clerk of Court using the CM/ECF system which sent notification of such filing to the following:

Jeffrey H. Hunt
Chad S. Pehrson
PARR BROWN GEE & LOVELESS
185 South State Street, Suite 800
Salt Lake City, Utah   84111
jhunt@parrbrown.com
cpehrson@parrbrown.com

Gerald E. Singleton
Michael Cardozo
Office of the Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007
gsinglet@law.nyc.gov

　　　　　　　　　　　　　　　/s/ Kelly D. Pickering

1203356v3